Filed 6/26/13  In re A.G. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re A.G. et al., Persons Coming Under the Juvenile Court Law. |  |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E057501 |
| Plaintiff and Respondent, | (Super.Ct.No. SWJ007556) |
| v. | OPINION |
| D.V., |  |
| Defendant and Appellant. |  |

APPEAL from the Superior Court of Riverside County.  John M. Monterosso, Judge.  Affirmed.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

D.V. (Mother) appeals after the termination of her parental rights to her children, A.G. and I.G., at a Welfare and Institutions Code[1] section 366.26 hearing. She claims (1) the juvenile court abused its discretion by denying her a hearing on her section 388 petition, and (2) the juvenile court erred by failing to apply the parental benefit exception of section 366.26, subdivision (c)(1)(B)(i). We disagree and affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

On October 15, 2009, the Riverside County Department of Public Social Services (the Department) initiated juvenile dependency proceedings as to newborns A.G. and I.G., alleging they were at substantial risk of harm pursuant to section 300, subdivisions (b) and (j). The Department alleged that the father abused substances, and two of the children's half siblings had been abused or neglected.[2] According to the detention report, Mother was residing in the home of the paternal grandparents, had adequate supplies for the children, and drug tested negative. Mother admitted there was another child welfare case regarding two other children and that she had lost her parental rights to them due to her failure to complete her reunification services. Mother was shocked that the father had a positive drug test. Finding a prima facie case, the juvenile court ordered the children detained from the father but allowed Mother to retain custody.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Because the father is not a party to this appeal, he will be referenced only if needed.

2

Mother moved in with her sister-in-law and reported that arrangement was "temporary at best." Essentially, she was living a transient lifestyle with no means of transportation and no resources to provide for her children without assistance. On November 16, 2009, an amended petition was filed. That same day, the juvenile court found jurisdiction over the children pursuant to section 300, subdivisions (b) and (j), ordered family maintenance services for Mother, and set a six month review hearing.

According to the six-month report filed on May 4, 2010, Mother and the twins were living in a one-bedroom apartment that was clean, neat and organized. She had large quantities of supplies for the children, who were well bonded with her. Mother had completed a parenting class and was participating in individual therapy. The therapist stated that Mother was willingly participating and was honest and forthcoming. The Department reported that Mother had made great progress with her services but needed six more months of services. On May 14, the juvenile court ordered six more months of services.

According to the 12-month report filed on November 5, 2010, Mother had been evicted from her apartment and was temporarily residing in a hotel. She was discharged from therapy because she had stopped attending sessions on May 13, 2010, due to her financial situation and residing in Lake Elsinore. Because of the twins, transportation was difficult. As of July 28, 2010, she had stopped attending an Al-Anon support group because she did not have a babysitter and had been moving around residing with friends and relatives; however, the support group offered free child care.

3

On November 8, 2010, the Department filed a section 342 petition to remove the children from Mother's care on the ground they were at substantial risk of harm because Mother had abused controlled substances. On November 4, 2010, Mother tested positive for using methamphetamines after submitting to a saliva test. She admitted smoking "crystal meth" on November 3. Initially she refused to disclose the whereabouts of the children, but later she admitted leaving the children in the care of an unknown third person at the hotel where she was staying. The Department recommended removing the children from Mother's custody and providing her with family reunification services.

On November 9 and 10, 2010, at the detention hearing on the section 342 petition, the juvenile court ordered the children detained and set a jurisdictional/dispositional hearing for December 6. On December 6, the court sustained the section 342 petition, removed the children from Mother's custody, and ordered reunification services for Mother.

On December 6, 2010, the juvenile court found the allegations in the first amended section 342 petition true. Physical custody of the children was removed from Mother and she was provided with reunification services. Reunification services to the father were terminated.

According to the status report filed on May 23, 2011, Mother completed therapy and her inpatient program. She was residing in the father's sister's home and stated that the father had moved out. Mother was to complete the aftercare program on June 17, 2011. The Department recommended that the children continue as dependents of the

court, that Mother continue to receive services, and that visitation be overnight and/or weekend.

On June 6, 2011, the juvenile court found a substantial probability of returning the children to Mother within six months and continued her services. Unsupervised, overnight visitation was authorized.

According to the Department's status report field on November 22, 2011, Mother was working part time at a restaurant and was residing with the paternal grandparents. They were providing her with financial support and housing until she could secure her own housing. Mother graduated from her outpatient recovery program, where she was a good participant and "great model for the other ladies in the program." She continued to test negative for drugs, but she had not shown up for three random drug tests. Unsupervised visits were going well. The Department wished to continue supervising Mother so that she could "demonstrate her sincere interest and desire to provide and maintain the safety of the children." The Department recommended a gradual transitioning of the children back to Mother's care with extended and overnight visits.

On December 6, 2011, the juvenile court found that Mother's progress with her case plan was incomplete. Mother was ordered to complete a hair follicle drug test because of her missed drug tests. If the drug test was clean, unsupervised overnight and weekend visits were authorized. If Mother could demonstrate an ability to make monthly payments, the Department was ordered to assist her with the first and last month's rent, up to $1,000.

On April 1, 2012, Mother gave birth to E.G. Following E.G.'s birth, Mother was diagnosed with Clostridium difficile (C. diff), a highly contagious bacterial infection. She had to remain hospitalized. Mother informed the hospital staff that the father would pick up E.G. She admitted to the social worker that the father was coming to the paternal grandparents' home to help take care of his ill father. E.G. was taken into protective custody, placed with his siblings, and a section 300 subdivisions (b) and (j) petition was filed on April 9. On April 10, the juvenile court detained E.G. On April 12, the court adopted the temporary detention findings and orders made on April 10.

On or about April 19, 2012, the Department electronically filed notice of the 18-month hearing, recommending that services to Mother be terminated and a section 366.26 hearing be set as to A.G. and I.G.

According to the status report filed on April 24, 2012, Mother and extended family members continued to state that the father did not reside with Mother at the paternal grandparents' home; however, they could not provide a current address for him and he was frequently seen at the home. The social worker opined that Mother "demonstrated no benefit in the services she has participated [in]. [She] continues to choose to remain in a relationship with the father . . . despite reasonably knowing he is abusing controlled substances and recently having the couple's third child." Mother's housing and financial status had not stabilized and she allowed the father unsupervised visits with the children. Mother did not following through with participating in Al-Anon and she was resistant to participating in the Safe Care Training.

6

According to the addendum report filed on June 11, 2012, Mother remained hospitalized. She had a tubal ligation and section of her colon removed due to her illness. She had a tube inserted in her stomach and received nutrition intravenously. She was in the intensive care unit and doctors were trying to determine why her body was not responding to certain treatment. According to her nurse, Mother remained on intravenous nutrition but was no longer on the "intubator" to assist with breathing.

On June 14, 2012, the juvenile court terminated services for Mother and set a section 366.26 hearing. The court also found that E.G. came within section 300, subdivisions (b) and (j), and adjudged him a dependent of the court. Services were denied to both Mother and the father pursuant to section 361.5, subdivision (b)(10) and (11), and a section 366.26 hearing was set for him as well.

According to the section 366.26 report filed on September 26, 2012, Mother was released from the hospital in July 2012,[3] and "it had been reported she had moved to Colorado." She remained under a doctor's care and had a colostomy bag. She informed the Department that she was homeless and trying to get housing so the children could be returned to her care. She had an active warrant out for "unlicensed driver." She requested that the Department use the paternal grandparents' address and the father as a contact address and phone number for her. On July 12, she contacted the Department to arrange visitation and she telephoned the adoptive parents regularly to inquire about the

---

[3] Subsequently, Mother admitted that she had been released on June 29, 2012.

7

children. The prospective adoptive parents wished to adopt all three children and were well bonded with them.

On October 12, 2012, Mother filed separate but similar section 388 petitions as to the children. She requested that the section 366.26 hearing be vacated and that reunification services be offered to her. She claimed she completed most of her case plan prior to June 14, 2012. She alleged she was residing with friends and was on the waiting list to get into a shelter. She asked the court to reinstate reunification services because she had overcome her illness and felt able to take care of her children.

On October 15, 2012, the juvenile court heard argument on Mother's section 388 petitions. Although the court found there had been a change in Mother's circumstances, there was no showing that it would be in the children's best interests to reunify with her. Thus, the juvenile court denied Mother's petitions and terminated all parental rights.

## II. SECTION 388

Mother contends the juvenile court erred by denying her an evidentiary hearing on her request to change a court order (§ 388) because she made a prima facie showing of best interests of the children.

"Section 388 permits '[a]ny parent or other person having an interest in a child who is a dependent child of the juvenile court' to petition 'for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court' on grounds of 'change of circumstance or new evidence.' (§ 388, subd. (a).) 'If it appears that the best interests of the child may be promoted by the proposed change of order, . . . the court shall order that a hearing be held . . . .' [Citation.] Section 388

8

thus gives the court two choices: (1) summarily deny the petition or (2) hold a hearing. [Citations.] In order to avoid summary denial, the petitioner must make a 'prima facie' showing of 'facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited.' [Citations.]" (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 912.)

"We review a summary denial of a hearing on a modification petition for abuse of discretion. [Citation.] Under this standard of review, we will not disturb the decision of the trial court unless the trial court exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination. [Citation.]" (*In re A.S.* (2009) 180 Cal.App.4th 351, 358.)

The court acknowledged that Mother had presented a prima facie case of changed circumstances; thus, we turn to the second prong, i.e., best interests of the children. According to Mother, she had visited the children, who called her "'momma.'" Although she was residing with friends, she was on a waiting list to get into a shelter. Mother's history (not including the other children for whom her parental rights were terminated) reflects more than 30 months of services interspersed with negative behaviors which led to the dependency. In other words, a continuation of services would only delay the case, as Mother had not shown a benefit from years of past services. While Mother argues that the children were initially removed because of the father, the record shows Mother failed to separate herself from the father. She lived with his parents, and possibly him. She remained in a relationship with him, giving birth to another child. And, she allowed him unsupervised visitation with the children. Nonetheless, she claims the Department failed

9

to take any action when it discovered that her relationship with the father continued.  We disagree.  Upon learning that the father was going to pick up E.G. from the hospital, the Department removed E.G. and filed a section 300 petition.  It further recommended that Mother's services and her parental rights be terminated.

In contrast, the children were residing with foster parents who wanted to adopt all three.  The adoptive parents offered a stable home environment.  Mother could not.  "After termination of services, the focus shifts from the parent's custodial interest to the child's need for permanency and stability.  [Citation.]" (*In re Amber M*. (2002) 103 Cal.App.4th 681, 685.)  Thus, the juvenile court could reasonably find the children would not benefit from vacating the section 366.26 hearing and providing Mother with more services.  Accordingly, we conclude that it did not err by summarily denying Mother's section 388 petitions.

### III.  THE BENEFICIAL PARENTAL RELATIONSHIP EXCEPTION

Mother contends the juvenile court erred by refusing to find that the beneficial parental relationship exception to termination applied.

In general, at a section 366.26 hearing, if the juvenile court finds that a child is adoptable it must terminate parental rights.  (§ 366.26, subds. (b)(1), (c)(1).)  This rule, however, is subject to a number of statutory exceptions (§ 366.26, subds. (c)(1)(A), (c)(1)(B)(i)-(vi)), including the beneficial parental relationship exception, which applies when "termination would be detrimental to the child" because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  (§ 366.26, subd. (c)(1)(B)(i).)

10

"When applying the beneficial parent-child relationship exception, the court balances the strength and quality of the parent-child relationship in a tenuous placement against the security and sense of belonging that a stable family would confer on the child. If severing the existing parental relationship would deprive the child of 'a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.' [Citation.]" (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1234-1235.)

"'[F]or the exception to apply, the emotional attachment between the child and parent must be that of parent and child rather than one of being a friendly visitor or friendly nonparent relative, such as an aunt.' [Citation.]" (*In re Jason J.* (2009) 175 Cal.App.4th 922, 938.) The parent must show more than frequent and loving contact or pleasant visits. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 229.) "'A biological parent who has failed to reunify with an adoptable child may not derail adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent. [Citation.] A child who has been adjudged a dependent of the juvenile court should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be *beneficial to some degree*, but that does not meet the child's need for a parent.' [Citation.]" (*In re Jason J.*, *supra*, at p. 937.)

"The parent contesting the termination of parental rights bears the burden of showing both regular visitation and contact and the benefit to the child in maintaining the parent-child relationship. [Citations.]" (*In re Helen W.* (2007) 150 Cal.App.4th 71, 80-

11

81.) This court must affirm a juvenile court's rejection of these exceptions if the ruling is supported by substantial evidence. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 809.) We review "the evidence most favorabl[e] to the prevailing party and indulg[e] in all legitimate and reasonable inferences to uphold the court's ruling. [Citation.]" (*In re S.B.* (2008) 164 Cal.App.4th 289, 297 (*S.B.*).) Because Mother had the burden of proof, we must affirm unless there was "indisputable evidence . . . [in her favor, which] no reasonable trier of fact could have rejected . . . ." (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 200.)

In arguing that the court erred in failing to apply the beneficial parental relationship exception, Mother makes the following points: She maintained regular visitation and contact with the children throughout their dependency; during the 13 months when the children were in her custody, the Department reported that they were well bonded with Mother; and after the children were removed from her custody, Mother quickly progressed to unsupervised visitation. Alternatively, Mother argues that guardianship would have met the children's needs.

Here, we will agree that Mother maintained regular contact with the children and that the children enjoyed visiting Mother. However, even if we assume that the children have a relationship with Mother, the court must select adoption as the permanent plan unless it finds there is a compelling reason for determining that termination of parental rights would be detrimental to the children. (§ 366.26, subd. (c)(1)(B)(i).) Mother has failed to show that severing the natural parent-child relationship would deprive the children of a substantial, positive emotional attachment such that they would be greatly

12

harmed. (*In re Angel B*. (2002) 97 Cal.App.4th 454, 466.) The required compelling reason for a finding of detriment, i.e., evidence the children would suffer great harm, is absent. Indeed, Mother offers no facts or argument that any of the children would be harmed by severing the parent-child relationship.

Finally, Mother argues the legal argument for guardianship is also stronger here. She asserts the children needed stability in their lives, but they also needed to maintain their relationship with her. We disagree. The foster parents in this case are able and willing to adopt the children. Thus, Mother's argument on this point is without merit.

As noted above, Mother had the burden to establish the applicability of the beneficial parental relationship exception in the trial court; on appeal, she has the burden of showing that the trial court's ruling was an abuse of discretion. We conclude that Mother has failed to meet this burden.

## IV. DISPOSITION

The orders appealed from are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
Acting P. J.

We concur:

RICHLI
J.

MILLER
J.

13